Jeffrey S. Leonard (No. 003809)
Jeffrey.Leonard@SacksTierney.com
James S. Samuelson (No. 017471 )
James.Samuelson@sackstierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., Fourth Floor
Scottsdale, Arizona  85251-3693
Telephone:  (480) 425-2600

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Axxess Energy LLC, a Delaware limited liability company, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Clear Energy Systems, Inc., a Nevada corporation, | |
| Defendant. | |

Plaintiff Axxess Energy LLC for its Complaint against Defendant Clear Energy Systems, Inc., alleges as follows:

## I.    GENERAL ALLEGATIONS

### A.    Parties

1.    Plaintiff Axxess Energy LLC ("Axxess") is a Delaware limited liability company with its principal place of business in Arvada, Colorado.  Axxess has two members, Sharna L. Coors and John K. Coors, both of whom are individuals who are domiciled in, and therefore citizens of, the State of Colorado.

2.    Defendant Clear Energy Systems, Inc. ("CES") is a Nevada corporation with its principal place of business in Tempe, Arizona.

### B.    Jurisdiction and Venue

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

as this is a dispute between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to the Stock Purchase Agreement at issue in this action.

## C.      Factual Background

5.      CES was formed in May, 2002.   Its business model is designing and developing a new radial engine fueled by gasoline or gaseous fuel, such as methane, natural gas or propane, purportedly for various commercial, industrial and military applications.

6.      Since its inception, CES has raised and spent approximately $40,000,000 on engine development.

7.      On or about December 14, 2012, Axxess, Grand Creek Ranch Legacy Trust ("Grand Creek"), and VP, Limited Liability Company ("VP"), as buyers, and CES, as seller, entered into a Stock Purchase Agreement (the "SPA") pursuant to which Axxess, Grand Creek and VP agreed to purchase shares of common stock in CES for the total price of $3,000,000.  Specifically, Axxess purchased 2,400,000 shares of common stock in CES for $1,800,000, Grand Creek purchased 1,300,000 shares of common stock for $975,000, and VP purchased 300,000 shares of common stock for $225,000.  A true and correct copy of the SPA without exhibits is attached hereto as **Exhibit 1** and incorporated herein by reference.

8.      Axxess and Grand Creek are affiliated entities.

9.      Mr. John Coors was at all relevant times and currently is the Managing Member of Axxess.

10.      At all relevant times, Mr. Mark Chenoweth was the Managing Member of VP.

11.      Messrs. Coors and Chenoweth are colleagues and communicated with each other regarding Axxess, Grand Creek and VP's purchase of stock in CES.

12.      Axxess, Grand Creek, and VP's investment in CES was contingent on the functioning of CES's new engine prototype.

1311911.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

13.     During the operational testing of the engine prototype, Mr. Coors was in contact with CES's Chief Executive Officer ("CEO") at that time, Anthony J. Carmen, Jr., and Mr. Chenoweth was in contact with CES's Chief Operating Officer ("COO") at that time.

14.     Prior to Axxess, Grand Creek and VP entering into the SPA and purchasing common stock in CES, CES's CEO and COO made certain statements to Axxess, Grand Creek and VP relating to the performance of and contract orders for the engine being developed by CES.

15.     In particular, Messrs. Coors and Chenoweth first visited CES's office and facilities on or about November 9, 2012.  During this first visit, the engine was being installed on a test track.  Testing of the engine commenced approximately one week after Messrs. Coors and Chenoweth's visit on November 9, 2012.  During the testing period, CES's former CEO stated to Mr. Coors that the engine prototype was working perfectly and that it had operated flawlessly for ten hours.  CES's former COO sent Mr. Chenoweth a short video showing the engine prototype start and also stated that the engine was performing well.  Additionally, CES asserted that "hard contract orders" for more than 100 engines were in hand awaiting delivery.  Messrs. Coors and Chenoweth communicated with each other regarding the various representations made by CES's former CEO and COO, including sharing the short video of the engine prototype purportedly in operation.

16.     The representations made by CES's CEO and COO to Axxess, Grand Creek and VP relating to the performance of the engine and contract orders were all made prior to the time Axxess, Grand Creek and VP agreed to purchase stock in CES.

17.     Axxess, Grand Creek and VP relied upon the statements made and information provided by CES' former CEO and COO in agreeing to invest and purchase stock in CES.

18.     In mid-January, 2013, subsequent to purchasing stock in CES pursuant to the SPA, Axxess, Grand Creek and VP discovered that the engine prototype had actually

1311911.v1

operated for less than one hour, the main bearing failed, the engine was torn apart, and a bearing redesign was required.

19.     In addition, Axxess, Grand Creek and VP also learned that the "hard contract orders" for over 100 engines were nothing more than expressions of interest from potential buyers and that no contract or purchase orders actually existed.

20.     Only after entering into the SPA and purchasing stock in CES did Axxess, Grand Creek and VP learn that the representations made by CES's CEO and COO regarding the performance of the engine and the status of contract orders for the engine were not true.

21.     Axxess, Grand Creek and VP would not have invested in and purchased shares of CES but for the representations made by CES's former CEO and COO regarding the performance of the engine prototype and the status of contract orders.

22.     On or about January 18, 2013, Mr. Carmen was terminated from his position as CEO of CES and a new CEO was appointed.

23.     Shortly after discovering that the representations made by CES's CEO and COO prior to entering into the SPA were not true, by letter dated January 29, 2013, Axxess notified CES of the misrepresentations and demanded rescission of its, Grand Creek's and VP's investments in CES.

24.     CES refused to rescind the stock purchase and refund the $3,000,000 purchase price paid by Axxess, Grand Creek and VP.

25.     CES has admitted the misstatements and false information provided by its former CEO and COO to Axxess, Grand Creek and VP prior to their purchase of stock under the SPA.

26.     On May 15, 2013, Grand Creek assigned all its rights, title and interest in 1,300,000 shares of common stock in CES to Mr. Coors who then assigned all his rights, title and interest in such common stock to Axxess.

27.     On April 21, 2014, VP assigned its rights, title and interest in its 300,000 shares of common stock in CES to Axxess.

4

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

28.     Axxess is the owner and holder of the initial 4,000,000 shares of common stock in CES issued pursuant to the SPA, including the 1,300,000 shares and 300,000 shares originally purchased by Grand Creek and VP, as evidenced by Stock Certificate Nos. 579, 580 and 838 (the "Initial Shares").   Axxess is also the owner of 1,277,558 additional shares of common stock as evidenced by Stock Certificate Nos. 1300, 1301 and 1341 issued on January 28, 2014 (the "Additional Shares").

**D.     CES's Bankruptcy and Relief from the Automatic Stay**

29.     On August 15, 2014, CES filed a Petition for Voluntary Relief under Chapter 11 of the Bankruptcy Code.  CES's bankruptcy is currently pending in an action known as *In re Clear Energy Systems, Inc.*, Case No. 2:14-bk-12716-BKM, United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Action").

30.     On August 14, 2015, the Court in the Bankruptcy Action granted CES and Axxess's "Stipulation and Order Granting Relief from Automatic Stay to Pursue Recovery from Insurance Proceeds" pursuant to which relief from the automatic stay imposed by CES's bankruptcy was granted to allow Axxess to pursue its claims against CES and to collect on any recovery solely from the insurance proceeds of CES's D&O Insurance Policy.   A true and correct copy of the Stipulation and Order Granting Relief from Automatic Stay is attached hereto as **Exhibit 2** and is incorporated herein by reference.

31.     All conditions precedent to the bringing and maintenance of this action have been performed or have occurred.

**II.     CLAIM FOR RELIEF**

**(Negligent Misrepresentation)**

32.     Axxess incorporates paragraphs 1 through 31 above as if fully set forth herein.

33.     CES's former CEO and COO made false statements and supplied false information to Axxess, Grand Creek and VP relating to the performance of CES's engine prototype and contract orders for the engine.

34.     CES's former CEO and COO supplied the false information to Axxess,

1311911.v1

Grand Creek and VP in connection with the sale of CES common stock to Axxess, Grand Creek and VP.

35.    CES's former CEO and COO failed to exercise reasonable care or competence in communicating the false information relating to the performance of its engine prototype and contract orders for the engine to Axxess, Grand Creek and VP.

36.    CES's former CEO and COO intended for Axxess, Grand Creek and VP to rely on and/or knew Axxess, Grand Creek and VP would rely on the false information supplied in deciding whether to purchase stock in CES.

37.    Axxess, Grand Creek and VP justifiably relied on the false information and statements of material facts made by CES in deciding to purchase common stock in CES.

38.    Based upon the false information provided by CES, Axxess, Grand Creek and VP entered into the SPA and purchased the Initial Shares.

39.    All rights, title and interest in the Initial Shares and Additional Shares owned by Grand Creek and VP have been assigned to Axxess.

40.    Axxess is the current owner and holder of all the Initial Shares and Additional Shares.

41.    Axxess has been damaged in an amount to be determined at trial as a result of CES's misrepresentations of material facts.

WHEREFORE, Plaintiff Axxess Energy LLC requests the Court enter judgment on its Claim for Relief against Defendant Clear Energy Systems, Inc. based upon its negligent misrepresentations in an amount to be proven at trial, together with pre- and post-judgment interest at the legal rate allowed by law, costs, attorney fees, and for such other and further relief the Court deems just and proper.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

1311911.v1

Dated this 14th day of September, 2015.

SACKS TIERNEY P.A.

By: */s/ Jeffrey S. Leonard*
_____
Jeffrey S. Leonard
James S. Samuelson
*Attorneys for Plaintiff*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1311911.v1